Carl **HOOPS**, Plaintiff,

v.

**KEYSPAN ENERGY and National Grid USA, Defendants.**

No. 10–CV–2777 (ADS)(ARL).

United States District Court, E.D. New York.

Nov. 1, 2011.

see also 794 F.Supp.2d 371.

Paul L. Dashefsky, Esq., Smithtown, NY, for Plaintiff.

McCarter & English, LLP, by: Patrick M. Collins, Esq., Of Counsel, New York, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff Carl Hoops ("the Plaintiff" or "Hoops") commenced this action against his employers Keyspan Corporation and National Grid USA (the "Defendants" or "the Company") seeking unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. Presently before the Court is the Defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the overtime claim is preempted by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et. seq.* For the reasons discussed below, the Defendants' motion is granted.

## I. BACKGROUND

The relevant facts of this case are set forth in the Court's previous decision *Hoops v. KeySpan Energy* ("*Hoops I*"), 794 F.Supp.2d 371 (E.D.N.Y.2011). The Court assumes the parties familiarity with that decision. However, a brief review of the factual and procedural background of this case is in order.

### A. The Initial Complaint

Carl Hoops has been employed by the Company since 1988, and has held the position of Emergency Service Specialist since in or about 1999. As an employee of the Company, the terms of Hoops' employment are governed by a collective bargain-

ing agreement (the "CBA") between his union, Local 1049, International Brotherhood of Electrical Workers ("the Union") and the Company. (*See* Affirmation of Patrick M. Collins in Support of Motion to Dismiss ("Collins Aff."), Exs. 1–3 (excerpts from the CBA).) According to Hoops, the CBA provides that certain workers, including himself, are entitled to miscellaneous shift differentials when they works certain hours. Approximately ten years ago, the Company implemented a payroll program called "Smart Time" to automatically calculate an employee's wages. Hoops contends that after the Company implemented the Smart Time payroll program, the Company stopped including certain shift differentials in the calculation of his overtime compensation in violation of the FLSA. On June 17, 2010, Hoops commenced this action against the Company, asserting, among other claims, a cause of action against the Company for willfully violating the FLSA by failing to pay him overtime (the "initial complaint").

### B. The Motion to Dismiss

On July 19, 2010, the Defendants moved to dismiss the complaint, alleging, among other things, that Plaintiff's FLSA claim was premature because his claim required the Court to decide the threshold issue of his right to receive shift differentials in his straight-time wage. According to the Defendants, because the Plaintiff's entitlement to shift differentials arose from the terms of the CBA, and the CBA requires employees to follow certain grievance procedures to dispute any violation of the agreement, the Plaintiff was required under Section 301 of the Labor Management Relations Act to exhaust his administrative remedies before commencing the instant action.

As the Court noted in *Hoops I,* the initial complaint created "an ambiguity as to whether: (1) the Plaintiff's claim is limited to the calculation of overtime compensation based on contractual shift differentials he received in his straight-time wage rate, or (2) the Plaintiff is also seeking an initial determination as to whether he was entitled under the CBA to receive certain contractual shift differentials." *Hoops I,* 794 F.Supp.2d at 377. The Court found this distinction to be relevant because "[i]n deference to the collective bargaining process, before bringing an action under Section 301, 'the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement.'" *Id.,* at 378 (quoting *Dougherty v. AT & T,* 902 F.2d 201, 203 (2d Cir.1990)). However, absent a clear and unmistakable waiver in the CBA, "[w]hen the dispute involves the violation of statutory rights under the FLSA ..., an employee is not required to exhaust the grievance procedure prior to bringing a federal lawsuit." *Id.*

Based on a review of the applicable case law, the Court held that even where it may ultimately be necessary to decide an FLSA claim, if the threshold question is a factual dispute arising under the CBA and subject to the CBA grievance procedures, the contractual issue must be resolved before the Court can reach the FLSA claim. Although the complaint was unclear, the Plaintiff stated in his opposition brief on the motion to dismiss that to resolve his unpaid overtime claim, the Court would first have to determine "what straight-time wage rate the Plaintiff was entitled to be paid (including night differential premium pay for hours worked during night shifts)" before reaching the issue of whether the shift differentials should have been included in his regular rate for overtime purposes. *Id.,* at 379. Thus, because the Plaintiff appeared to concede in his opposition brief that before the Court could adjudicate his right to overtime under the FLSA the Court would first need to deter-

mine what shift differentials he was entitled to receive in his straight-time wage rate—a right arising from the CBA and subject to the CBA grievance procedures—the Court held that the Plaintiff's FLSA claim was preempted by the LMRA.

However, the Court acknowledged that the Plaintiff's statement in his opposition brief may not be an accurate representation of his position, and "recognize[d] that there is a possibility that some, if not all, of the contractual shift differentials underlying the Plaintiff's FLSA claim may have been included in his straight-time wage rate and therefore would not require interpretation of the CBA." *Id.*, at 380. As a result, the Court afforded the Plaintiff the opportunity to serve an amended complaint "clarifying this ambiguity". *Id.*

### C. The Amended Complaint

On March 23, 2011, Hoops filed an amended complaint (the "amended complaint"). In the amended complaint, Hoops provided additional detail about the hours he works and his compensation. Hoops stated that he is considered a "shift worker" because his working shifts fluctuate each week between working a combination of "day shifts" (8:00 am to 4:00 pm) and "night shifts" (4:00 pm to 12:00 am and 12:00 am to 8:00 am). (Am. Compl., ¶ 8.) As set forth in the CBA, as a shift worker Hoops was entitled to receive shift differentials that fluctuate based on the type of shift he works. In particular, Hoops alleges that he receives an extra hourly sum of fifty cents ($.50) for hours worked during the day shift (the "day shift differential") and an extra hourly sum of one dollar and ninety cents ($1.90) for hours worked during the night shifts (the "night shift differential"). (Am. Compl., ¶ 10.)

Also, Hoops alleged additional facts about the deficiencies in the Smart Time program, as well as the Company and the Union's knowledge about the alleged deficiencies with the program. According to Hoops, the Smart Time program was not designed to accommodate the fluctuating pay rates of "shift workers". As a result, Hoops contends that when he worked a day shift immediately followed by a night shift (8:00 am to 4:00 pm and 4:00 pm to 12:00 am), the payroll program failed to include the $1.90 night differential into his rate of pay for the purposes of calculating his overtime pay. In addition to failing to incorporate the appropriate night shift differential into his regular rate of pay for overtime compensation, Hoops also alleged that the Smart Time program resulted in the Company's failure to pay him "duly earned night shift differentials". (Am. Compl., ¶ 12.)

In or about June 2010, Hoops discussed this deficiency in the Smart Time program with Michael Whalen, the Business Representative for the Union. According to Hoops, Whalen informed him that six years prior to their conversation, the Company's Vice President of Human Resources, Robert Greenbaum, informed Whalen that he was "aware of the problem" with the Smart Time program, and that the Company expected to correct the problem by the end of the 2010 calendar year. (Am. Compl., ¶ 19.) Hoops recounted that in his conversation with Whalen, he advised Whalen that if the Union did not intend to pursue a grievance as to any past money owed to him, he would have to hire an attorney and independently pursue the claim for overtime compensation. In response, Hoops alleges that Whalen "advised [him] to do so, wished him luck, and requested that [he], 'Let [them] know how [he] make[s] out.'" (Am. Compl., ¶ 20.)

Shortly after December 2010, Hoops contends that the problem with the Smart Time program was resolved, and, since that time, whenever he works a day shift immediately followed by a night shift, his overtime rate of pay has properly included the $1.90 night shift differential. In the amended complaint Hoops asserts one cause of action against the Company for willful failure to properly compensate Hoops for hours worked in excess of forty hours in a week in violation of section 207 of the FLSA.

### D. The Instant Motion

On April 5, 2011, the Defendants moved to dismiss the amended complaint on the ground that despite the new allegations in the amended complaint, the Plaintiff's FLSA claim still required the Court to make the threshold determination of his entitlement to shift differentials in his straight-time wage rate under the CBA. Thus, because the Court is preempted by the LMRA from deciding the threshold issue, the Defendants argue that the amended complaint must be dismissed.

In response, the Plaintiff contends that because he pled the specific shift differentials he was entitled to in the amended complaint, his right to the shift differentials is an issue of fact appropriate for resolution by this Court. In addition, the Plaintiff asserts that because he alleges that the Company admitted that his unpaid wages were the result of the Smart Time program, his entitlement to shift differentials requires a credibility determination and not the interpretation of the CBA. Finally, the Plaintiff argues that he should be excused from any requirement to exhaust his administrative remedies under the CBA because the Union stated that they would not pursue his grievance and encouraged his federal suit.

On October 27, 2011, the Court held a hearing on the instant motion. At this hearing, the Plaintiff conceded that he was not alleging that the Union breached the duty of fair representation, but rather that he simply should not have to exhaust administrative remedies under the circumstances of this case.

## II. DISCUSSION

### A. Legal Standard

Under the now well-established *Twombly* standard, "[t]o survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' " *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir.2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)); *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir.2009). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills*, 572 F.3d 66 (2d Cir.2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949). " 'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should

assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal,* 129 S.Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *In re NYSE Specialists Secs. Litig.,* 503 F.3d 89, 91 (2d Cir.2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed.R.Civ.P. 12(b)(6). *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993).

### B. Whether the Plaintiff's FLSA Claims are Preempted by the LMRA

▪ The Defendants assert that, to the extent there was an ambiguity as to whether the Plaintiff's unpaid overtime claim under the FLSA required the Court to make a threshold finding on the Plaintiff's entitlement to certain shift differentials, such ambiguity has been resolved and warrants the dismissal of the FLSA action as premature. The Court agrees.

In the amended complaint, the Plaintiff explicitly alleges that:

> Despite the Plaintiff working overtime hours as described in paragraph "11," above, the Defendants *failed to pay the Plaintiff duly earned night shift differentials* and to include the night shift differential in his overtime rate of pay of time and a half.

(Am. Compl., ¶ 12 (emphasis added).) Moreover, as he did in his opposition to the motion to dismiss the initial complaint, the Plaintiff states that before the Court reaches the question of whether the Defendants failed to pay him overtime wages under the FLSA, the Court must first "determine[ ] ... what straight-time wage rate the Plaintiff was entitled to be paid (including night differential premium pay for hours worked during night shifts)". (Pl.'s Opp. at 7.) Thus, there can be no dispute that before the Court can reach the issue of whether the Plaintiff is entitled to unpaid overtime compensation, the Court must first determine whether he was entitled to receive night shift differentials in his straight-time wage rate. As the Court held in *Hoops I,* the Plaintiff's right to receive night shift differentials is a contractual right under the CBA, and therefore must be submitted to the grievance procedures in the CBA. *Hoops I,* 794 F.Supp.2d at 379 ("Where, as here, 'the alleged violations hinges on the collective bargaining agreements' definition of the terms of employment, they must be brought under the LMRA and in accordance with the agreement's grievance and arbitration provisions.'" quoting *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.,* No. 10–CV–2661, 2011 WL 321186, at *4 (S.D.N.Y. Jan. 28, 2011)); *Vadino v. A. Valey Eng'rs,* 903 F.2d 253, 266 (3d Cir.1990) ("[C]laims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA.").

The cases cited by the Plaintiff for the proposition that an employee is not required to exhaust administrative remedies under the collective bargaining agreement prior to bringing an FLSA claim in federal court are distinguishable. In the cases relied upon by the Plaintiff, the courts held that, absent a clear and unmistakable waiver in the collective bargaining agreement, a plaintiff was not required to exhaust administrative remedies before bringing *statutory FLSA claims* in federal court. For example, in *Tran v. Tran,* 54 F.3d 115 (2d Cir.1995), the Second Circuit held that the plaintiff was not required to

submit his statutory FLSA claims to arbitration under the collective bargaining agreement prior to commencing a suit in federal court. Notably, the *Tran* court also held that "all claims of plaintiff *other than those stated under the FLSA* should have been the subject of a timely demand under the arbitration clause of the applicable union contract". *Id.* at 118 (emphasis added).

Furthermore, in *Scott v. City of New York*, 592 F.Supp.2d 386 (S.D.N.Y.2008), the plaintiffs argued that the defendants violated the FLSA by failing to include night shift differentials in their regular rate of pay for the purposes of calculating overtime. Unlike the instant case, the plaintiffs were not alleging that they did not receive the contractual shift differentials, but rather that the shift differentials were not properly included in their overtime pay as required by the FLSA. Thus, because this claim arose from the statutory right to overtime compensation, and the applicable collective bargaining agreement did not require arbitration of claims that the employer failed to comply with statutory law, the plaintiffs were not required to submit their claim for a failure to include shift differentials in their overtime compensation to arbitration. *Id.* at 406; *see also Conzo v. City of New York*, 438 F.Supp.2d 432, 434, 437 (S.D.N.Y.2006) (holding that a provision in a collective bargaining agreement "provid[ing] for a special administrative procedure to be used *solely for resolving FLSA disputes*" was unenforceable because it would "effectively bar plaintiffs from pursuing relief in federal court" for their FLSA claims) (emphasis added); *Giles v. City of New York*, 41 F.Supp.2d 308, 312 (S.D.N.Y.1999) (holding, in a case where the dispute centered on whether the listed rates of compensation in the collective bargaining agreement violated the FLSA overtime requirements, that exhaustion of administrative remedies was not required absent a "clear and unmistakable waiver" in the collective bargaining agreement of an employee's right to bring statutory claims in federal court).

By contrast, in this case, the Court is not holding that the Plaintiff is required to submit his statutory FLSA claim to the CBA's dispute resolution procedure. Rather, the Court holds that because the Plaintiff's entitlement to unpaid overtime under the FLSA hinges on his contractual right to receive night shift differentials in his straight-time wage rate, the Court cannot adjudicate the statutory claim without a ruling on the contract claim. It is the threshold question that must be determined pursuant to the CBA dispute resolution procedures, and therefore the FLSA claim is premature. *See Elswick v. Daniels Electric Inc.*, 787 F.Supp.2d 443 (S.D.W.Va.2011) (dismissing the plaintiff's FLSA claims as premature where the court found that the plaintiff "is entitled to additional overtime pay only if a fact finder determines that defendant improperly classified him as a laborer rather than a lineman and paid him overtime wages based on the laborer's rate", and that the court was preempted by the LMRA from adjudicating the threshold issue of the plaintiff's proper classification).

The Plaintiff further argues that the Court would not be required to interpret the CBA to determine whether he was entitled to have night shift differentials included in his straight-time wage because: (1) he pled the specific shift differentials he was entitled to in the amended complaint and therefore his entitlement to shift differentials is an issue of fact, and (2) he alleges that the Defendants admitted that their failure to pay him duly earned night shift differentials and overtime was the result of the Smart Time program, and therefore to determine his entitlement to

shift differentials the Court only needs to make a credibility determination. The Court finds that neither of these arguments is compelling.

Whether presented as a factual dispute or a credibility determination, the underlying question remains the same, namely, was the Plaintiff entitled to receive a night shift differential in his straight-time wage rate. The relevant standard is not whether an issue reserved for arbitration under the terms of the CBA would require extensive interpretation of the CBA, but rather whether the dispute is one that arises under and is governed by the contract. Article XVII of the CBA expressly sets forth the dispute resolution procedures governing any "alleged violation of any of the provisions of this Agreement ..., or any dispute involving the interpretation of this Agreement." (Collins Aff., Ex. 2.) The Plaintiff's right to receive night shift differentials derives solely from the CBA, *see Hoops I*, 794 F.Supp.2d at 378–79, and therefore his initial recourse for a violation of that right is through the CBA dispute resolution procedures.

Finally, the Plaintiff contends that the Court should excuse his failure to exhaust the grievance procedures because the Union controls the grievance procedure and prevented the Plaintiff from utilizing it. In support of his argument that the Union prevented him from pursuing his claim through the grievance procedures, the Plaintiff points to the informal conversation between himself and a Union representative, in which the Union representative advised him to pursue his claims in federal court and "wished him luck". (Am. Compl., ¶ 20.) The amended complaint is otherwise void of any allegations that the Plaintiff followed any of the procedures set forth in the CBA for exhausting his administrative remedies.

Generally, "when a collective bargaining agreement provides for arbitration and grievance procedures for employee grievances, the aggrieved employee must make an attempt to exhaust the procedures set forth in the governing collective bargaining agreement prior to resorting to judicial relief". *Tand v. Solomon Schechter Day School of Nassau County*, 324 F.Supp.2d 379, 384 (E.D.N.Y.2004) (Spatt, J.) (citing *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). A court may excuse a plaintiff from exhausting a CBA's dispute resolution procedures for a claim arising under the contract when "the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation". *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983). As the Plaintiff conceded at the hearing before this Court, the Plaintiff is not asserting that the Union breached its duty of fair representation.

Rather, the Plaintiff appears to be arguing that because the Union allegedly told him that they did not intend to pursue his claim, and the Union did not discourage him from bringing this claim in federal court, equitable considerations warrant excusing his failure to exhaust. The Plaintiff does not cite, nor has the Court found, any statutory or legal basis to support the proposition that, absent any allegation that the Union breached its duty of fair representation, equitable considerations can circumvent the preemptive power of the LMRA. Accordingly, the Court finds that the Union's alleged statement that it would not pursue a grievance on the Plaintiff's behalf, and even the Union's alleged support for the Plaintiff's lawsuit, does not excuse the Plaintiff's failure to exhaust his

administrative remedies on the threshold issue of his entitlement to receive night shift differentials in his straight-time wage rate.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Defendants' motion to dismiss the Plaintiff's FLSA claim is granted and the complaint is dismissed without prejudice, and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**