Talbert JOHNSON, et al., Plaintiffs,

v.

**D.M. ROTHMAN COMPANY, INC., Defendant.**

**No. 10 Civ. 8269(VM).**

United States District Court, S.D. New York.

May 14, 2012.

David Christopher Wims, David Wims, Law Offices, Brooklyn, NY, for Plaintiffs.

Patrick Michael McKenna, McKenna & Schneier, Malverne, NY, for Defendant.

### *DECISION AND ORDER*

VICTOR MARRERO, District Judge.

Plaintiffs Talbert Johnson ("Johnson") and Troy Saunders ("Saunders;" and with Johnson, "Plaintiffs"), bring this action against their employer, defendant D.M. Rothman Company, Inc. ("Rothman"), for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* New York Labor Law ("NYLL"), Articles 6 and 19, and the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).[1] Plaintiffs claim that Rothman failed to include certain wage differentials owed to them under the governing Collective Bargaining Agreement ("CBA"). Rothman counterclaims, seeking recoupment for the overpayment of wages.

By letter dated June 30, 2011, Rothman sought leave to move for summary judgment dismissing Plaintiffs' claims and granting Rothman's counterclaims for overpayment of wages (Docket No. 11, "June 30 Letter"). Plaintiffs responded by letter dated October 18, 2011 (Docket No. 13) opposing Rothman's request, and Rothman replied in support on November 9, 2011 (Docket No. 17, "November 9 Letter").

In an Order dated January 5, 2012 (Docket No. 18), the Court directed the parties to submit letter briefs and supporting evidence addressing issues raised in the parties' letters, specifically: (1) whether the disposition of Plaintiffs' state law claims depends on the interpretation of the CBA; and (2) whether the alleged offsets for overpayment nullify any overtime wages owed to Plaintiffs. On January 19, 2012, Rothman submitted a six-page letter brief with exhibits (Docket No. 19, "Rothman Ltr. Br." or "January 19 Letter"). Along with Rothman's June 30 and November 9 Letters, the Court now deems Rothman's January 19 Letter a motion for summary judgment pursuant to Federal

---

1. The complaint alleges claims under the National Labor Relations Act ("NLRA"). To be consistent with case law, the Court will instead refer to the LMRA, which "amended and encompasses the [NLRA] of 1935." *Pac. Maritime Association v. Local 63, Int'l Longshoremen's and Warehousemen's Union,* 198 F.3d 1078, 1079 n. 2 (9th Cir.1999).

Rule of Civil Procedure 56 ("Rule 56"). Plaintiffs responded to the January 5, 2012 Order with a five-page letter brief, dated January 19, 2012 (Docket No. 20, "Pl. Ltr. Br."). For the reasons discussed below, Rothman's motion for summary judgment is GRANTED in part and DENIED in part.

## I. *BACKGROUND*[2]

Rothman employs Plaintiffs as full-time warehousemen at its Bronx, New York facility. Johnson has worked for Rothman in that capacity since 1988; Saunders, since 2001. Plaintiffs are members of Local Union No. 202 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the "Union"). At all times relevant to this suit, the terms of the Plaintiffs' employment were governed by the CBA between the Union and the New York Produce Trade Association, Inc., of which Rothman is a member.

## A. *TERMS OF THE CBA*

The CBA, which has undergone several minor revisions over the course of Plaintiffs' employment,[3] establishes uniform provisions concerning the hours, wages, and working conditions of Union members. Plaintiffs' claims pertain to three "wage differentials" provided in the CBA: a "night differential," "grandfather" pay, and "hi-lo" pay. The differentials refer to premium pay added to the base wage rates for warehousemen. The CBA provides that "[a] night differential of $5.00 per hour will be paid to all employees for hours worked between 8:00 P.M.–4:30 A.M." (Rothman Ltr. Br., Ex. B, art. VI(A)(2)(a).) "Grandfathered employees" shall receive "an additional $5.35 per hour for all hours worked between 8 P.M. and 12:00 A.M." (*Id.*, art. VI(A)(2)(b)(3).) The CBA defines "grandfathered employees" as those who "are employed prior to January 16, 1992 and were receiving double time for hours worked between 8 P.M. and 12:00 A.M." (*Id.*, art. VI(2)(b)(1),) Finally, the CBA directs that "Hi–Lo Operators shall receive eighteen and three-quarters cents ($ .1875) per hour over the aforementioned wage rates." (*Id.*, art. VI(B).) The term "Hi–Lo Operators" is not defined.

The CBA also establishes a three-step procedure "for the purpose of resolving all grievances and disputes" between the Union and the Association. (Rothman Ltr. Br., Ex. B, at 1.) First, an aggrieved employee must timely submit a written grievance to his employer and the Union, which then must meet and try to resolve the grievance within seven working days. Second, if the grievance remains unresolved, a "Labor–Management Grievance Committee" (the "Grievance Committee") must review the grievance and provide a nonbinding recommendation to the Union and employer. Finally, if the recommendation of the Grievance Committee does not resolve the dispute, either the Union or the employer may refer the issue to binding arbitration.

**2.** The Court derives the factual summary from the following pleadings, and any exhibits attached thereto: (1) Rothman's Ltr. Br. dated January 19, 2012 (Docket No. 19); (2) Plaintiffs' Ltr. Br. dated January 19, 2012 (Docket No. 20); (3) Rothman's letter dated June 30, 2011 (Docket No. 11); (4) Plaintiffs' letter dated October 18, 2011 (Docket No. 13); and (5) Rothman's letter dated November 9, 2011 (Docket No. 17). Except where specifically referenced, no further citation to these sources will be made.

**3.** Rothman submitted three versions of the CBA and two stipulations with amendments. For the purposes of deciding this motion for summary judgment, the Court relied primarily on the most recent version of the CBA (Rothman Ltr. Br., Ex. B), valid as of January 17, 2010, which is identical to the preceding versions in all respects relevant to this suit.

## B. *OFFICIAL GRIEVANCES AND THE INSTANT ACTION*

On November 3, 2006, Johnson filed a "Local 202 Grievance Form" complaining about the denial of hi-lo pay. In or around February 2008, Johnson filed another grievance requesting back pay for the night, grandfather, and hi-lo wage differentials.[4] On February 20, 2008, the Grievance Committee rejected Johnson's grievance pertaining to grandfather pay. The Grievance Committee did, however, negotiate an agreement offering Johnson $10.50 in back pay for hi-lo work and offered to designate him as a hi-lo operator going forward. Although Rothman paid Johnson the back pay, Johnson did not sign the agreement designating him a hi-lo operator.[5]

Separately from Johnson, Saunders filed a grievance on September 28, 2007 regarding his entitlement to hi-lo pay. At an October 17, 2007 Grievance Committee meeting, Rothman agreed to pay Saunders $22.50 back pay, and Saunders was instructed not to use the hi-lo machine in the future. Saunders has admitted that he never grieved his alleged entitlement to grandfather pay, and there is no indication in the record that Saunders grieved his entitlement to the night differential either.

After several related administrative actions,[6] Plaintiffs filed this action claiming that they "were and are not paid time and one-half of their respective regular rates." (Compl. ¶ 20 (Docket No. 1).) In particular, Plaintiffs argue that they were entitled to the three wage differentials described above, and that Rothman failed to include those differentials in the calculation and payment of defendant's time-and-a-half overtime wages for hours worked in excess of forty hours a week.

## II. *LEGAL STANDARD*

### A. *SUMMARY JUDGMENT STANDARD*

Pursuant to Rule 56, a court may grant summary judgment if, on the record before it, there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Alabama v. North Carolina,* —— U.S. ——, 130 S.Ct. 2295, 2308, 176 L.Ed.2d 1070 (2010). In determining whether disputed issues of material fact exist, a court must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor. *See, e.g., Shapiro v. New York Univ.,* 640 F.Supp.2d 411, 418 (S.D.N.Y.2009) (*citing Matsushita*

---

**4.** Although the record does not contain a February 2008 grievance form from Johnson requesting "hi-lo" pay, Rothman asserts that he grieved his entitlement to "hi-lo" pay at that time, and the record shows that the Grievance Committee did address that issue on February 20, 2008. (*See* Rothman Lt. Br., Exs. L, T.)

**5.** The record contains no indication of whether the Grievance Committee considered Johnson's grievance regarding the night differential.

**6.** On April 16, 2008, Saunders filed a complaint with the New York State Division of Human Rights ("NYSDHR") against Rothman and the Union, alleging discrimination on account of race in the processing and

resolution of his hi-lo grievance. This claim was cross-filed with the United States Equal Opportunity Employment Division ("EEOC"). By Determination and Order dated November 22, 2010, the NYSDHR dismissed the complaint. The EEOC adopted the findings of the NYSDHR and dismissed the federal charge.

On June 30, 2008, Johnson filed a National Labor Relations Board ("NLRB") charge against the Union for breaching the Union's duty of fair representation in the processing of his grievances. Following an investigation, the NLRB dismissed the charge on August 21, 2008; Johnson appealed, and the decision was upheld on November 12, 2008. The NLRB's Director of Appeals denied reconsideration.

*Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986) (citations omitted). The moving party bears the burden of proving that no genuine issue of material fact exists, or that, because the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., LP*, 22 F.3d 1219, 1223–24 (2d Cir. 1994). If the moving party satisfies its burden, the nonmoving party must provide specific facts showing that there is a genuine issue for trial in order to survive the motion for summary judgment. *See Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 98–99 (2d Cir.2003).

B. *STATUTORY PROVISIONS REGARDING WORKERS' RIGHTS*

The FLSA and NYLL, where applicable, require that employers pay overtime for hours worked over forty per week at a rate "not less than one and one-half times the regular rate" of pay. 29 U.S.C. § 207(a)(1); *see* N.Y. Comp.Codes R. & Regs. tit. 12, § 142–2.2 (2012). When an employer calculates overtime pay, "all remuneration for employment," subject to certain exceptions, shall be included in an employee's "regular rate" of pay. 29 U.S.C. § 207(e); *see Isaacs v. Central Parking Sys. of N.Y., Inc.*, No. 10 Civ. 5636, 2012 WL 957494, at *4 (E.D.N.Y.

Feb. 27, 2012) ("The parallel NYLL has similar requirements."). An employee's "regular rate" of pay includes shift differentials. *See Conzo v. City of New York*, 667 F.Supp.2d 279, 283 (S.D.N.Y.2009) (holding that shift differentials are part of employees' regular rate of pay); *Scott v. City of New York*, 629 F.Supp.2d 266, 269 (S.D.N.Y.2009) (recognizing that regular rate includes " 'all payments which the parties have agreed shall be received regularly during the work [period]' " (quoting *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 468, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948))).

The FLSA confers on employees rights to overtime pay which are independent of contractual rights arising out of a CBA. *See Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 745, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (holding that FLSA rights are independent of rights arising out of CBA), In contrast, § 301 of the LMRA[7] (" § 301") "governs claims founded directly on rights created by [CBAs], and also claims substantially dependent on analysis of a [CBA]...." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (internal quotation marks omitted). Section 301 requires that an employee exhaust the governing CBA's grievance procedures before bringing a claim for breach of a CBA under the LMRA. *See Dougherty v. American Tel. & Tel. Co.*, 902 F.2d 201, 203–04 (2d Cir.1990) (*citing Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)).

Section 301 preempts state law claims that involve interpretation of an underlying CBA. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413, 108

---

7. Section 301 of the LMRA states: "Suit for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction over the parties...." 29 U.S.C. § 185(a).

S.Ct. 1877, 100 L.Ed.2d 410 (1988) ("[A]n application of state law is preempted by § 301 of the [LMRA] only if such application requires the interpretation of a [CBA]."). Similarly, § 301 precludes claims brought under the FLSA which involve interpretation of a CBA. *Vadino v. A. Valey Eng'rs,* 903 F.2d 253, 266 (3d Cir.1990) (dismissing FLSA claim dependent on interpretation of CBA because such claims "must be resolved pursuant to the procedures contemplated under the LMRA, specifically grievance, arbitration, and, when permissible, suit in federal court under section 301"); *Hoops v. KeySpan Energy,* 794 F.Supp.2d 371, 379 (E.D.N.Y. 2011) (same); *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.,* No. 10 Civ. 2661, 2011 WL 321186, at *4 (S.D.N.Y. Jan. 28, 2011) ("If any of the alleged [FLSA] violations hinges on the [CBA's] definition of the terms of employment, they must be brought under the LMRA and in accordance with the agreement's grievance and arbitration provisions.") (*citing Vadino,* 903 F.2d at 266). Thus, although FLSA and state law overtime claims that "are truly independent of a [CBA] are enforceable," the LMRA will preclude such claims that are "inextricably intertwined" with the terms of a CBA *Dougherty,* 902 F.2d at 203–04. The preemptive effect of § 301 assures that arbitration agreements are enforced and promotes the "uniform interpretation of [CBAs]" under federal law. *Lingle,* 486 U.S. at 404, 108 S.Ct. 1877; *see Livadas v. Bradshaw,* 512 U.S. 107, 122, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).

■ "Of course, not every dispute concerning employment, or tangentially involving a provision of a [CBA], is preempted by § 301...." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Indeed, "the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."

*Livadas,* 512 U.S. at 124, 114 S.Ct. 2068. For example, § 301 does not mandate preemption of state law claims requiring "mere referral" to a CBA to determine damages owed. *Vera v. Saks & Co.,* 335 F.3d 109, 115 (2d Cir.2003) ("Nor would a state claim be preempted if its application required mere referral to the CBA for information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled." (internal quotation marks omitted)); *see Wynn v. AC Rochester,* 273 F.3d 153, 158 (2d Cir.2001) (holding that "simple reference to the face of the CBA" does not require preemption of state fraud claim).

## III.  DISCUSSION

Section 301 preempts Plaintiffs' overtime claims arising from their alleged entitlement to grandfather and hi-lo pay. In addition, the evidence in the record shows that, for almost every pay period, Rothman's overpayments offset any FLSA overtime owed to Plaintiffs as a result of the night differential. Finally, the statute of limitations bars a significant portion of Plaintiffs' LMRA claims.

## A.  OVERTIME CLAIMS RELATED TO GRANDFATHER AND HI–LO PAY

■ Section 301 bars Plaintiffs' NYLL and FLSA claims for overtime pay including the grandfather and hi-lo differentials because resolving those claims would require the Court to interpret the terms of the CBA. Although Plaintiffs are correct that NYLL and the FLSA provide statutory rights to overtime which are independent of the CBA, the threshold issue here—whether Plaintiffs are entitled to the grandfather and hi-lo differentials at all—is "inextricably intertwined" with the CBA. *Dougherty,* 902 F.2d at 203–204; *see*

*Hoops v. Keyspan Energy,* 822 F.Supp.2d 301, 306–09 (E.D.N.Y.2011) (holding that § 301 precluded employee's FLSA claim for overtime because resolving claim required threshold inquiry into whether employee was entitled to wage differential under CBA).

While "[t]he boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive[,]" determining Plaintiffs' entitlement to the grandfather and hi-lo differentials requires more than "simple reference to the face of the CBA." *Wynn,* 273 F.3d at 158. Rothman disputes that Plaintiffs qualify as "Hi–Lo Operators" or "grandfather employees" as those terms are used in the CBA, and the plain language of the CBA does not indicate a clear answer. For example, the CBA does not provide a definition for the term "Hi–Lo Operator;" nor does it indicate the frequency with which an employee had to work: nighttime hours prior to 1992 to qualify as a "grandfathered employee." To determine whether the Plaintiffs were entitled to grandfather and hi-lo pay, the Court would have to evaluate Plaintiffs' work histories in light of the intended meaning and purpose of the CBA's terms, a task which the Court is ill-equipped to perform, and which the LMRA mandates should be left to the CBA's designated grievance procedures. Thus, unlike the United States Court of Appeals for the Second Circuit's decision in *Wynn,* 273 F.3d at 158, where there was no question regarding the meaning of relevant CBA provisions, here, the Court cannot address Plaintiffs' grandfather and hi-lo claims without digging into forbidden ground. *Cf., Severin v. Project OHR, Inc.,* No. 10 Civ. 9696, 2011 WL 3902994, at *3–*4 (S.D.N.Y. Sept. 2, 2011) at *3–4 (finding no

preemption or preclusion where "[n]o provision of the CBA needs to be interpreted" to decide FLSA or NYLL claims); *Polanco v. Brookdale Hosp. Med. Ctr.,* 819 F.Supp.2d 129, 135 (E.D.N.Y.2011) ("Plaintiffs' allegation that they performed work after their scheduled shift but were not paid for [such work] asserts an independent FLSA violation that does not rest upon any interpretation of the CBA."). Therefore, the Court finds that Rothman is entitled to summary judgment as a matter of law on Plaintiffs' state and federal overtime claims arising from their alleged entitlement to the grandfather and hi-lo wage differentials.

## B. OVERTIME CLAIMS RELATED TO NIGHT DIFFERENTIAL

Section 301 of the LMRA does not preempt or preclude Plaintiffs' overtime claims alleging failure to pay the night differential. For the purposes of its motion for summary judgment, Rothman does not dispute that Plaintiffs were entitled to the night differential and concedes that it erred by failing to add the night differential to the regular rate before calculating overtime. (*See* Rothman Ltr. Br. at 5.) Moreover, the provision of the CBA which guarantees the night differential does not require interpretation by the Court, because the meaning of its plain language is clear. (*See* Rothman Ltr. Br., Ex. B, art. VI(A)(2)(a) ("A night differential of $5.00 per hour will be paid to all employees for hours worked between 8:00 P.M.–4:30 P.M.").) It is therefore settled for the purposes of summary judgment that Rothman owes Plaintiffs some back pay as a result of its failure to include the night differential in overtime calculations.[8]

---

**8.** According to Rothman, its failure to add the night differential to the Plaintiffs' regular rate of pay prior to calculating overtime resulted

in an underpayment of $2.50 for every hour of overtime worked. (*See* Jan. 19, 2012 letter at 5.)

Rather than disputing Plaintiffs' entitlement to the night differential, Rothman argues that, even taking into account its acknowledged underpayments, Plaintiffs' FLSA overtime claim is offset because Rothman actually made substantial overpayments owing to other calculation errors. Under the FLSA, "[e]xtra compensation paid [for certain activities] shall be creditable toward overtime compensation payable pursuant to this section." 29 U.S.C. § 207(h)(2). "[T]here are three categories of payments which may be credited against overtime compensation mandated by the FLSA," including "extra compensation provided by a premium rate for hours worked in excess of an employee's regular working hours." *Conzo*, 667 F.Supp.2d at 289 (*citing* 29 U.S.C. §§ 207(h)(2), 207(e)(5) (internal quotation marks omitted)).

■ Rothman asserts that it paid Plaintiffs an extra half-hour for each day worked over the last six years because it mistakenly included an unpaid meal break in its accounting,[9] and as a result, tabulated overtime beginning at 37.5 hours per week rather than forty hours per week. Rothman argues that these overpayments offset the Plaintiffs' FLSA overtime claim. In support of its offset argument, Rothman has submitted two charts showing a weekly breakdown of hours worked by Johnson and Saunders since 2005, meal hours erroneously paid, and, ultimately, the weekly net credit owed to Rothman as a result of this miscalculation. (*See* Rothman Ltr. Br., Exs. Y, Z.) Based on the charts Rothman submitted, the amount that Rothman overpaid Plaintiffs each week—2.5 hours for meal breaks and 1.25 hours resulting from mistaken payment of overtime—is greater than the amount of overtime Rothman admits it owes.[10]

Plaintiffs concede that alleged overpayments may be credited toward FLSA overtime within each pay period, *i.e.*, each week.[11] (See Pl. Ltr. Br. at 3.) But Plaintiffs argue that their FLSA claims nevertheless survive because any underpayment of overtime must first be doubled as liquidated damages. (*See id.*) Apart from this

---

9. The CBA provides: "Employees shall be permitted one-half (1/2) hour for lunch.... Employees shall not work through their lunch period and the Employer shall not pay any employees for their lunch period." (Rothman Ltr. Br., Ex. B, art. VII(C).)

10. Under the FLSA's statutory language, Rothman is entitled to credit the 1.25 hours resulting from mistaken payment of overtime against its FLSA. overtime requirement; however, it is not entitled to credit the 2.5 hours of regular wages mistakenly paid, since that is not "premium" compensation paid for work in excess of regular hours. See 29 U.S.C. 207(e)(5) (credit allowed for "extra compensation provided by a premium rate for hours worked in excess of an employee's regular working hours"); 29 C.F.R. 778.201(a) ("Certain premium payments made by employers for work in excess of or outside of specified daily or weekly standard work periods or on certain special days are regarded as overtime premiums."); *see also Howard v. City of Springfield, Ill.*, 274 F.3d 1141, 1147 (7th

Cir.2002) ("The test [for overtime credit] is set forth in the [FLSA], and is whether the payments are made because the hours are outside the regular workday.") (interpreting 29 U.S.C. § 207(e)(7)). Rothman indirectly acknowledged this in its motion for summary judgment:

> Even without the credit of 2.5 hours for erroneously paid meal breaks, the mere payment of the overtime rate beginning at 37.5 hours instead of 40 hours (*i.e.*, 1.25 hours overpayment per week) alone produces an employer credit each week equivalent to the underpayment of $2.50 overtime rate for approximately 9 to 11 hours of overtime. The plaintiffs had so few hours of statutory overtime each week that the employer's overpayments always exceeded the alleged underpayment in each and every week.

(Rothman Ltr. Br. at 6.)

11. *See Scott v. City of New York*, 592 F.Supp.2d 475, 484 (S.D.N.Y.2008) (holding that one week is pay period under FLSA).

argument, Plaintiffs do not challenge the figures in Rothman's charts, object to the charts' admissibility, or cite contrary evidence.

Assuming Plaintiffs are correct that liquidated damages should be added prior to offset,[12] such damages do not alter the net result here. Rothman's charts indicate that Plaintiffs typically worked few hours of overtime each week. (*See* Rothman Ltr. Br., Exs. Y, Z.) If Rothman owes Plaintiffs $5.00 per hour over forty hours a week (an equivalent of overtime owed plus liquidated damages),[13] the resulting overtime owed to Plaintiffs exceeds the credit to Rothman only on weeks in which Plaintiffs worked more than four hours of overtime. For example, in a week in which Johnson worked 41.75 hours (Feb. 16, 2010), Rothman owes him $8.75 for the 1.75 hours of FLSA overtime, inclusive of liquidated damages. However, for that same week, Rothman overpaid Johnson $20.56 for the extra 1.25 hours of wages paid.[14] Rothman's offset negates Johnson's FLSA claim that week.

In sum, there is no genuine issue of material fact that Rothman's overpayments offset Plaintiffs FLSA overtime, except in weeks when the Plaintiffs worked more than four hours overtime. Johnson worked more than four hours overtime on only two occasions since 2005 (the weeks ending January 10, 2006, and January 30, 2007); Saunders never worked more than four hours overtime in any week since 2005. (*See* Rothman Ltr. Br., Exs. Y, Z.) The Court therefore grants Rothman's motion for summary judgment and dismisses: (1) Saunders' FLSA overtime claims arising from the night differential; and (2) Johnson's FLSA overtime claims arising from the night differential for every week except the weeks ending January 10, 2006 and January 30, 2007.

## C. *LMRA CLAIM*

■■■ In addition to their overtime claims, Plaintiffs also sue Rothman for breach of the CBA pursuant to § 301 of the LMRA. The complaint alleges that the Union breached its duty of fair representation in its handling of Plaintiffs' grievances.[15] Johnson's LMRA claim is barred by the applicable six-month statute of limitations. *See DelCostello*, 462 U.S. at 170–71, 103 S.Ct. 2281 (holding that statute of limitations for employee's action against employer for breach of CBA is six months). "The cause of action accrues at the time that [Plaintiffs] knew or reasonably should have known of the [U]nion's

---

**12.** Under the FLSA, a district court is generally required to award liquidated damages equal to actual damages. *See* 29 U.S.C. § 216(b). "A district court can deny liquidated damages, however, in an exercise of its discretion where the employer demonstrates that it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its conduct did not violate the FLSA," *Torres v. Gristede's Operating Corp.*, 628 F.Supp.2d 447, 465 (S.D.N.Y.2008).

**13.** Since Plaintiffs have not challenged Rothman's calculations, the Court adopts Rothman's admission that it underpaid Plaintiffs $2.50 per hour of overtime worked.

**14.** According to the CBA, the regular rate of pay for warehousemen was between $15.10 and 16.90 per hour between 2005 and 2010. The Court arrived at the $20.56 figure by multiplying the hourly rate effective on Jan. 17, 2010 ($16.45) by 1.25.

**15.** An employee has standing to sue his employer for breach of a CBA under § 301 of the LMRA only if there are allegations that the Union breached its duty of fair representation. *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) ("To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." (internal quotation marks omitted) (alterations in original)).

alleged breach of the duty of fair representation." *Vera v. Saks & Co.,* 424 F.Supp.2d 694, 708 (S.D.N.Y.2006) (internal quotation marks and citation omitted). Johnson filed a charge with the NLRB on June 30, 2008, alleging that the Union had failed to fairly represent his grievances against Rothman. (*See* Rothman Ltr. Br., Ex. T.) Thus, as of at least June 30, 2008, Johnson knew of the Union's alleged breach. Since this case was filed more than six months afterward, the limitations period for Johnson's LMRA claim has run.

As for Saunders, he never grieved the issue of grandfather pay or his entitlement to the night differential; thus, he cannot allege that the Union did not fairly represent him on those charges, and he cannot raise an LMRA claim on that score. *See DelCostello,* 462 U.S. at 163–65, 103 S.Ct. 2281 (holding that, in order to bring a claim for breach of a CBA, "an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the [CBA]"). Therefore, Saunders' LMRA claims are potentially viable only with regard to his alleged entitlement to the hi-lo differential. Although it seems unlikely that the Union breached its duty of fair representation—the Grievance Committee actually ruled in Saunders' favor on that issue, and the NYSDHR determined that the Union did not act in a discriminatory manner (*see* Rothman Ltr. Br., Ex. O)—at this point, the Court lacks adequate information regarding the nature of Saunders' allegations to grant Rothman's motion for summary judgment on the LMRA claim with regard to hi-lo pay.

## IV. *ORDER*

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 of defendant D.M. Rothman is **GRANTED** in part and **DE-**

NIED in part in accordance with this Decision and Order.

**SO ORDERED.**

